UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TEVEST A. VANCE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-5049** |
| **JASON KENT, WARDEN** | **SECTION: "J"(1)** |

## REPORT AND RECOMMENDATION

Petitioner, Tevest A. Vance, a Louisiana state prisoner, filed this federal application seeking habeas corpus relief pursuant to 28 U.S.C. § 2254. For the following reasons, it is recommended that the application be dismissed with prejudice.

On October 15, 2015, petitioner pleaded guilty to vehicular homicide under Louisiana law. On that same date, he also pleaded guilty to being a second offender and was sentenced as such to a term of twenty-five years imprisonment without benefit of probation, parole, or suspension of sentence.[1]

On or about September 12, 2016, petitioner then filed with the state district court an application for post-conviction relief.[2] That application was denied on September 20, 2016.[3] His related writ applications were likewise denied by the Louisiana Fourth Circuit Court of Appeal on November 10, 2016,[4] and by the Louisiana Supreme Court on April 2, 2018.[5]

---

[1] State Rec., Vol. 1 of 2, transcript of October 15, 2015; State Rec., Vol. 1 of 2, minute entry dated October 15, 2015; State Rec., Vol. 1 of 2, plea waiver forms.
[2] State Rec., Vol. 1 of 2.
[3] State Rec., Vol. 1 of 2, Judgment dated September 20, 2016.
[4] State v. Vance, No. 2016-K-1119 (La. App. 4th Cir. Nov. 10, 2016); State Rec., Vol. 2 of 2.
[5] State ex rel. Vance v. State, No. 2016-KH-2244, 2018 WL 1603005 (La. Apr. 2, 2018); State Rec., Vol. 2 of 2. While that writ application was pending, petitioner also filed with the state district court a motion to correct an illegal sentence. State Rec. Vol. 1 of 2. That motion was denied on February 23, 2018. State Rec., Vol. 1 of 2, Judgment dated February 23, 2018.

On May 9, 2018, petitioner filed the instant federal application seeking habeas corpus relief pursuant to 28 U.S.C. § 2254.[6] The state has filed a response conceding that the application is timely but arguing that it should nevertheless be dismissed.[7]

## I.  Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both. The amendments modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

---

[6] Rec. Doc. 1.
[7] Rec. Doc. 8.

2

Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning."  Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases.  A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (footnotes, internal quotation marks, ellipses, and brackets omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held:  "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case."  White v. Woodall, 572 U.S. 415, 426 (2014).  However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error.  Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision.  AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Id. (citations and quotation marks omitted).  Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law."  Wright v. Van Patten,

3

552 U.S. 120, 126 (2008) (quotation marks and brackets omitted).  The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one."  Bell, 535 U.S. at 694.  Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief.  Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so.  As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
> If this standard is difficult to meet, that is because it was meant to be.  As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.  Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal.  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (emphasis added; citations omitted); see also Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts – from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

The Supreme Court has expressly warned that although "some federal judges find [28 U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the

4

law and apply the strictly deferential standards of review mandated therein. White v. Woodall, 572 U.S. 415, 417 (2014).

## II. Petitioner's Claims

In his federal application, petitioner asserts four claims alleging that he received ineffective assistance of counsel in violation of the Sixth Amendment. The state argues that the first two of those claims fail on the merits and that the remaining two claims are procedurally barred. The state is correct.

### A. Meritless Claims

In his first two claims, petitioner alleges that his counsel was ineffective for (1) failing to conduct an adequate investigation and (2) coercing petitioner to plead guilty to vehicular homicide rather than negligent homicide. Those two claims were denied by the state courts in the petitioner's post-conviction proceedings.

In denying relief, the state district court held:

> Applicant's contention is that defense counsel was ineffective, thereby violating his Sixth Amendment rights. An ineffective assistance claim is assessed by the two prong test established in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). First, the defendant must show that counsel's performance was deficient, i.e. that he made mistakes so serious that he was not functioning as the counsel guaranteed to a defendant by the Sixth Amendment. Secondly, one must show that the deficiency prejudiced him. This showing can only be made if the defendant can show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. At 693, 104 S, Ct. 2068.
> The specifics of Mr. Vance's complaint about counsel's performance is that he coerced him into pleading guilty and that he did not conduct a sufficient investigation into the facts surrounding the case. These allegations are flatly contradicted by Mr. Vance's sworn testimony in the guilty plea colloquy with the court. When asked by the court if he was satisfied with the performance of counsel, Vance unequivocally answered yes. When asked if he had been coerced into pleading guilty, without hesitation Vance replied no. He likewise candidly admitted that he was factually guilty of the charge facing him. Mr. Vance's current claim of coercion is not credible.

> To say that Mr. Vance was familiar with the process of pleading guilty would be an understatement. Beginning in 1998, he pled guilty to possession of cocaine, followed by guilty pleas to possession of cocaine and possession of marijuana in 1999, possession of heroin and obstruction of justice in 2003, attempted possession of heroin in 2006, theft in 2007, possession of marijuana in 2008, distribution of marijuana in 2009 and distribution of cocaine in 2011. This court will not credit his present claim that he was duped or forced into pleading guilty by the attorney in the present matter. Indeed, with the vehicular homicide being his eighth felony conviction, it would seem that counsel performed a miracle obtaining the plea agreement he did.
>
> For these reasons, the application does not make out a case of ineffective assistance of counsel.[8]

The Louisiana Fourth Circuit Court of Appeal then likewise denied relief, stating:

> Relator has not shown that counsel was ineffective or that he was coerced into entering his guilty plea. La. C.Cr.P. art. 930.2. Therefore, this court finds no error in the district court's September 20, 2016 ruling denying his application for post-conviction relief.[9]

The Louisiana Supreme Court thereafter denied petitioner's related writ application, stating:

> Relator fails to show he was denied the effective assistance of counsel during plea negotiations under the standard of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), or that he entered his guilty plea involuntarily. We attach hereto and make a part hereof the district court's written reasons denying relief.[10]

Because ineffective assistance of counsel claims present mixed questions of law and fact, this Court must defer to the state court decision rejecting such claims unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002). Moreover, the United States Supreme Court has

---

[8] State Rec., Vol. 1 of 2, Judgment dated September 20, 2016.
[9] State v. Vance, No. 2016-K-1119 (La. App. 4th Cir. Nov. 10, 2016); State Rec., Vol. 2 of 2.
[10] State ex rel. Vance v. State, No. 2016-KH-2244, 2018 WL 1603005 (La. Apr. 2, 2018); State Rec., Vol. 2 of 2.

explained that, under the AEDPA, federal habeas corpus review of an ineffective assistance of counsel claim is in fact *doubly* deferential:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

Harrington v. Richter, 562 U.S. 86, 101 (2011) (citation omitted). The Supreme Court then explained:

> Surmounting Strickland's high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.
> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. *The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The Strickland standard is a general one, so the range of reasonable

7

> applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.*

Id. at 105 (citations omitted; emphasis added). Therefore, on a habeas review of an ineffective assistance claim, "federal courts are to afford *both* the state court *and* the defense attorney the benefit of the doubt." Woods v. Etherton, 136 S. Ct. 1149, 1151 (2016) (emphasis added; quotation marks omitted). For the following reasons, the Court finds that, under those stringently deferential standards, it simply cannot be said that relief is warranted with respect to petitioner's first two ineffective assistance of counsel claims.

Here, the state court correctly identified the clearly established federal law governing ineffective assistance of counsel claims: Strickland v. Washington, 466 U.S. 668 (1984). As the state court noted, Strickland established a two-prong test for evaluating such claims. Specifically, a petitioner seeking relief must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. Id. at 697. A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if

it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to satisfy the prejudice prong of an ineffective assistance of counsel claim in a case involving a guilty plea, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); accord James v. Cain, 56 F.3d 662, 667 (5th Cir. 1995).

In the instant case, petitioner first contends that his right to the effective assistance of counsel was violated by his counsel's failure to conduct an adequate investigation in connection with the charged offense. However, petitioner has presented no evidence whatsoever as to what investigative steps counsel actually took or failed to take. Without such evidence, he cannot show that counsel performed deficiently. Netter v. Cain, Civ. Action No. 15-584, 2016 WL 7157028, at *11 (E.D. La. Oct. 6, 2016), adopted, 2016 WL 7116070 (E.D. La. Dec. 7, 2016).

The Court additionally notes that petitioner's claim also fails for another reason. As noted, to establish that he was prejudiced by counsel's purported errors, petitioner must show that there is a reasonable probability that he would have insisted on going to trial, rather than pleading guilty, if not for those errors. Hill, 474 U.S. at 59; James, 56 F.3d at 667. Here, petitioner does not even expressly assert that he would not have pleaded guilty but for the alleged defects in his counsel's

performance; however, even if he had done so, the Court would find such an assertion to be totally lacking in credibility for the following reasons.

Petitioner was charged with vehicular homicide.[11] He does not dispute that he was driving the vehicle which caused the accident and the victim's death; rather, he merely attempts to mitigate his culpability by arguing that he was an alcoholic and that the support pole he struck with his vehicle was improperly installed.[12] However, petitioner's alcoholism would not be a defense to the charge of vehicular homicide.[13] Further, so long as petitioner's intoxication *contributed to* the accident, the fact that the pole installation was defective likewise would not be a valid defense.[14]

---

[11] In pertinent part, Louisiana law provides:

> A. Vehicular homicide is the killing of a human being caused proximately or caused directly by an offender engaged in the operation of, or in actual physical control of, any motor vehicle, aircraft, watercraft, or other means of conveyance, whether or not the offender had the intent to cause death or great bodily harm, whenever any of the following conditions exist and such condition was a contributing factor to the killing:
>
> (1) The operator is under the influence of alcoholic beverages as determined by chemical tests administered under the provisions of R.S. 32:662.
> (2) The operator's blood alcohol concentration is 0.08 percent or more by weight based upon grams of alcohol per one hundred cubic centimeters of blood.

La. Rev. Stat. Ann. § 14:32.1. According to the police report, petitioner's blood alcohol concentration at the time of the accident was .241 percent. State Rec., Vol. 1 of 2, police report.

[12] The police report stated: "The arrested subject left the roadway and struck a support pole. The pole then struck [the victim] who was walking on the side walk. The victim expired on the scene as a result of her injuries that she sustained in the crash." State Rec., Vol. 1 of 2, police report.

[13] Louisiana law provides:

> The fact of an intoxicated or drugged condition of the offender at the time of the commission of the crime is immaterial, except as follows:
>
> (1) Where the production of the intoxicated or drugged condition has been involuntary, and the circumstances indicate this condition is the direct cause of the commission of the crime, the offender is exempt from criminal responsibility.
> (2) Where the circumstances indicate that an intoxicated or drugged condition has precluded the presence of a specific criminal intent or of special knowledge required in a particular crime, this fact constitutes a defense to a prosecution for that crime.

La. Rev. Stat. Ann. § 14:15.

[14] See, e.g., State v. Louis-Juste, 201 So. 3d 308 (La. App. 2d Cir. 2016) ("The state does not have to prove that the defendant's intoxication was the sole cause of the accident; rather, the defendant's intoxication need only be a contributing factor that led to the killing."); State v. Trahan, 637 So. 2d 694, 701-03 (La. App. 1st Cir. 1994) (Although "[t]he vehicular homicide statute does not impose criminal liability based solely on the coincidental fact that the fatal

10

Because petitioner had no valid defense to the charge of vehicular homicide, he obviously (and accurately) must have found the prospect of proceeding to trial to be cause for considerable concern. However, in exchange for his agreement to plead guilty, he was able to secure substantial concessions from the state. Most importantly, due to his extremely lengthy criminal history, he faced a very severe sentence as a habitual offender. See La. Rev. Stat. Ann. § 15:529.1. But, as part of the plea agreement, the state agreed to charge him as only a second offender and further agreed to a sentence of only twenty-five years, a sentence below the maximum sentence which could be imposed on a mere first offender found guilty of vehicular homicide.[15]

In summary, because petitioner's conviction at a trial could be anticipated with a high degree of certainty, he lost little by pleading guilty. On the other hand, he gained much: a guaranteed substantial reduction in his potential sentencing exposure. In light of those facts, as well as the complete absence of any concrete evidence that counsel's alleged failures actually affected the decision to plead guilty, the undersigned would find any allegation that petitioner would have insisted on going to trial totally lacking in credibility.

Petitioner next contends that his right to the effective assistance of counsel was violated when his counsel "coerced Petitioner to plead guilty to Vehicular Homicide instead of the permissible lesser included offense of Negligent Homicide …."[16] This claim fails for several reasons.

First, negligent homicide carries a significantly lower penalty,[17] and petitioner has presented no evidence whatsoever that the state was in fact willing to accept a plea bargain to any

---

accident occurred (without fault on the part of the accused) while the accused was operating a vehicle under the influence of alcohol," if the defendant's blood alcohol concentration contributed to the accident, then the fact that there was also another cause which contributed to the death is not a defense.).

[15] The sentence for vehicular homicide is not less than five years nor more than thirty years. La. Rev. Stat. § 14:32.1(B).

[16] Rec. Doc. 1, p. 10.

[17] The maximum sentence for negligent homicide is only five years. La. Rev. Stat. § 14:32(C).

offense other than the one charged. Obviously, counsel cannot be deemed ineffective for failing to secure a plea bargain that the state was unwilling to enter. See, e.g., United States v. Valdez, Nos. 4:13-CV-080 and 4:11-CR-065, 2013 WL 1496935, at *3 (N.D. Tex. Apr. 10, 2013) ("It is well-established that there is no constitutional right to a plea bargain. For movant to succeed on [a claim that counsel was ineffective for failing to secure a plea agreement], he must show a reasonable probability that, but for deficient representation, the government would have offered a plea agreement that the court would have accepted." (citation omitted)).

Second, petitioner likewise has presented no evidence to support his self-serving allegations that his plea was coerced by counsel. On the contrary, as the state district court noted, petitioner testified under oath as follows during the colloquy:

> THE COURT:
> Have you been forced, threatened or intimidated into making this plea?
>
> MR. VANCE:
> No, Your Honor.
>
> THE COURT:
> Are you fully satisfied with the handling of your case by your attorneys and the way in which they have represented you?
>
> MR. VANCE:
> Yes, Your Honor.[18]

Accordingly, petitioner's allegation concerning purported coercion was adequately explored at the time his plea was taken, and the judge was convinced that there was in fact no coercion which would render the plea involuntary. In light of the foregoing and petitioner's statement under oath that had not in fact been "forced, threatened or intimidated" into entering his pleas, he "face[s] a heavy burden in proving that [he is] entitled to relief because such testimony

---

[18] State Rec., Vol. 1 of 2, transcript of October 15, 2015, pp. 5-6. Petitioner also made those same assertions in writing. State Rec., Vol. 1 of 2, plea waiver forms.

in open court carries a strong presumption of verity." DeVille v. Whitley, 21 F.3d 654, 659 (5th Cir. 1994). Where, as here, a petitioner provides no independent evidence to support his claim of coercion, he cannot meet the burden of proof necessary to refute his open-court statements as to the free and voluntary nature of his plea. See, e.g., Lyon v. Scott, No. 03-05539, 1995 WL 71359, at *2 (5th Cir. Jan. 31, 1995); Lewis v. Quarterman, Civ. Action No. G-04-527, 2007 WL 2021770, at *3 (S.D. Tex. July 10, 2007) ("Petitioner, making nothing more than self-serving allegations that his plea was involuntary, has not satisfied his heavy burden of rebutting the presumption of the declarations he made in open court.").

For all of these reasons, it is clear that petitioner has not demonstrated that the state court decision rejecting these first two ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, utilizing the AEDPA's doubly deferential standards of review applicable to such claims, this Court should likewise deny relief.

### B. Procedurally Barred Claims

In his final two claims, petitioner alleges that his counsel was ineffective for (1) "allow[ing] the court to impose an illegal sentence" and (2) failing to seek a pre-sentence investigative report. The state argues that these two claims are procedurally barred from federal review because petitioner failed to exhaust his remedies in the state courts.

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (quotation marks omitted). "To exhaust, a petitioner must have fairly presented the substance of his claim to the state courts." Wilder v. Cockrell, 274 F.3d 255, 259 (5th Cir. 2001)

13

(quotation marks omitted). Here, petitioner has never presented these two claims to the state courts. Therefore, necessarily, they are unexhausted.

The United States Fifth Circuit Court of Appeals has further held that "when a prisoner fails to exhaust available state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred," then the claims are considered defaulted in federal court. Nobles v. Johnson, 127 F.3d 409, 420 (5th Cir. 1997) (internal quotation marks omitted).

In the instant case, there is little doubt that any new attempt by petitioner to exhaust these two claims would be rejected by the state courts on procedural grounds. In fact, in denying petitioner's post-conviction writ application, the Louisiana Supreme Court expressly stated:

> Relator has now fully litigated an application for post-conviction relief in state court. Similar to federal habeas relief, see 28 U.S.C. § 2244, Louisiana post-conviction procedure envisions the filing of a second or successive application only under the narrow circumstances provided in La.C.Cr.P. art. 930.4 and within the limitations period as set out in La.C.Cr.P. art. 930.8. Notably, the Legislature in 2013 La. Acts 251 amended that article to make the procedural bars against successive filings mandatory. Relator's claims have now been fully litigated in accord with La.C.Cr.P. art. 930.6, and this denial is final. Hereafter, unless he can show that one of the narrow exceptions authorizing the filing of a successive application applies, relator has exhausted his right to state collateral review.[19]

As a result, petitioner's unexhausted claims are procedurally barred from federal relief unless he demonstrates either that (1) both "cause" exists for his default and "prejudice" would result from the application of a procedural bar or (2) the Court's failure to address the claims would result in a "fundamental miscarriage of justice." See, e.g., Bagwell v. Dretke, 372 F.3d 748, 756-57 (5th Cir. 2004).

"To establish cause for a procedural default, there must be something *external* to the petitioner, something that cannot fairly be attributed to him." Johnson v. Puckett, 176 F.3d 809,

---

[19] State ex rel. Vance v. State, No. 2016-KH-2244, 2018 WL 1603005 (La. Apr. 2, 2018); State Rec., Vol. 2 of 2.

14

816 (5th Cir. 1999) (quotation marks omitted).  Here, petitioner has made no effort whatsoever to establish cause for his default, and, "[a]bsent a showing of cause, it is not necessary for the court to consider whether there is actual prejudice."  Martin v. Maxey, 98 F.3d 844, 849 (5th Cir. 1996).

Because petitioner has not met the "cause and prejudice" test, his claims are barred from federal review unless the application of the procedural bar would result in a "fundamental miscarriage of justice."  In order to establish that there would be a "fundamental miscarriage of justice," a petitioner must "make a persuasive showing that he is actually innocent of the charges against him.  Essentially, the petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted."  Finley v. Johnson, 243 F.3d 215, 220 (5th Cir. 2001) (citations omitted).

By entering his unconditional guilty plea, petitioner has already conceded under oath that he in fact committed and was guilty of the crime of which he stands convicted.  Therefore, he would face a daunting burden to present a credible "actual innocence" claim.  Specifically, the United States Supreme Court has explained: "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – *whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence* – that was not presented at trial.  Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful."  Schlup v. Delo, 513 U.S. 298, 324 (1995) (emphasis added).  Here, petitioner has presented no new evidence whatsoever to show that he did not in fact commit vehicular homicide.  As a result, he has not met the "actual innocence" prong of the procedural bar analysis.

For these reasons, these two claims are procedurally barred and should not be considered by this Court.

## RECOMMENDATION

It is therefore **RECOMMENDED** that the federal application seeking habeas corpus relief filed by Tevest A. Vance be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this twenty-seventh day of March, 2019.

**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**